UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
SABRINA SPENCER,

                Plaintiff,

           -against-

COUNTY OF NASSAU, NASSAU POLICE
OFFICER JOSEPH CALAMITA, NASSAU
POLICE OFFICER MICHAEL THROO,
NASSAU POLICE OFFICER MICHAEL
O'BRIEN, NASSAU POLICE OFFICER DAVID
HUSING, NASSAU POLICE OFFICER
JEFFREY MARSHALL, NASSAU POLICE
OFFICER EDWIN NUNCIO, NASSAU POLICE
OFFICER MATTHEW PUHALSKI, NASSAU
POLICE OFFICER KLIND 7086, NASSAU
POLICE OFFICER RITTE 8950, NASSAU
POLICE OFFICER KELLE 8414, NASSAU
POLICE OFFICER CATAL 8093, and JOHN
DOE POLICE OFFICERS 1-4, in their individual
capacities,

                Defendants.
-------------------------------------------------------------- x

COMPLAINT

Jury Trial Demanded

This is an action to recover money damages arising out of the violation of Plaintiff Sabrina Spencer's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

3. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) as Plaintiffs reside in the District and the claim arose in the District.

## JURY DEMAND

4. Ms. Spencer respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

5. Ms. Spencer is a citizen of the State of New York, Mount Vernon, New York.

6. Defendant County of Nassau is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Defendant County of Nassau maintains the Nassau County Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the County of Nassau.

8. That at all times hereinafter mentioned, Defendant Nassau Police Officers JOSEPH CALAMITA, MICHAEL THROO, MICHAEL O'BRIEN, DAVID HUSING, JEFFREY MARSHALL, EDWIN NUNCIO, MATTHEW PUHALSKI, KLIND 7086, RITTE 8950, KELLE 8414, CATAL 8093, and JOHN DOE POLICE OFFICERS 1-4, were duly sworn police officers of the Nassau County Police Department and were acting under the supervision of said department and according to their official duties.

9. That at all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York or the County of Nassau.

10. Each and all of the acts of the Individual Defendants alleged herein were committed by said Defendants while acting within the scope of their employment by Defendant City of New York.

## FACTS

2

11. On or about September 27, 2014, at approximately 2:45pm, Ms. Spencer was walking on the sidewalk on North 2d Street, a residential street in North New Hyde Park, New York, in Nassau County.

12. At the time, Ms. Spencer was 46 years old.

13. Ms. Spencer is African-American and she and stands roughly 5'2".

14. Earlier, a local Chase bank reported to police that Ms. Spencer had attempted to cash a check with an identification card that the bank believed belonged to another person.

15. As Ms. Spencer walked on North 2d Street, she saw two men in plainclothes following her. One of them was recording or taking photos with a camera phone. On information and belief, these two men were either bank employees or plainclothes officers responding to the Chase complaint.

16. Afetr Ms. Spencer noticed the two plainclothes men, she turned up the next driveway and walked behind the house to which it belonged.

17. Two uniformed Defendants arrived on the scene and they went behind the home, where they found Ms. Spencer. One of them struck Ms. Spencer in the head when they found her.

18. Both of these two Defendants were white males. One was tall with with red or brown/auburn hair (it is Ms. Spencer's best estimate that he is around 6'0") (hereinafter the "taller Defendant"), and the other was shorter (but still stood taller than the 5'2" Ms. Spencer) with dark brown or black hair (hereinafter the "shorter Defendant").

19. These two Defendants escorted Ms. Spencer to the street, where three or four police vehicles were parked in a row. The rest of the Defendants stood outside their respective police vehicles or inside them.

20. The taller Defendant pushed Ms. Spencer next to one of the police vehicles. The shorter Defendant with dark hair stood to the side. The taller Defendant took Ms. Spencer's hands and began to handcuff her.

21. Ms. Spencer did not resist arrest.

22. The taller Defendant was also insulting Ms. Spencer and, suddenly and without justification, he kneed Ms. Spencer, extremely hard, in the vagina.

23. Ms. Spencer experienced excruciating pain from this use of unjustified force from the taller Defendant's knee.

24. At the time Ms. Spencer was suffering from some degree of vaginal prolapse and, as a result of the impact of the taller Defenadnt's knee, Ms. Spencer suffered serious injury to her partially prolapsed uterine lining. The impact also caused Ms. Spencer great injury to her vaginal and pubic region generally.

25. The taller Defendant now pushed the handcuffed Ms. Spencer against the police vehicle and began to search her.

26. The handcuffed Ms. Spencer was not resisting arrest in any manner. Ms. Spencer posed no threat to the taller Defendant, the other Defendants, or the general public. Ms. Spencer had not been accused of or arrested for any crime involving violence or contraband. Ms. Spencer was crying from the use of force.

27. The taller Defendant now began to search Ms. Spencer. He roughly shoved his hand down the front of her pants, under her underwear, through her legs to her buttocks. His hand roughly searched her buttocks and forward over her vaginal region.

28. As the taller Defendant roughly searched Ms. Spencer's bare intimate areas, which were already injured from the above-described incident, Ms. Spencer protested and was crying.

29. The taller Defendant made crude remarks to Ms. Spencer in response to her protests during the search. Among them, he said, in sum and substance, that she was a "disgusting animal" and that he could do what he wanted.

30. Other Defendants did not step forward to intervene despite having seen the taller Defendant knee Ms. Spencer, then begin to perform a rough and unjustified search of her intimate areas in public as she cried in protest.

31. At some point a female officer approached, called out to intervene, and the taller Defendant stepped aside from Ms. Spencer.

32. Ms. Spencer walked toward the female officer awkwardly so as not to lose her now-unzipped pants entirely. Because Ms. Spencer was handcuffed, she could not hold her pants to achieve this.

33. The female officer, who wore glasses and had short curly or wavy hair, consoled Ms. Spencer.

34. At the precinct, Ms. Spencer told the captain on duty what had happened, but he said that what she described was nothing about which she had any complaint.

35. Ms. Spencer continued to complain about the incident to other Nassau County personnel, and the incident was reported to the Internal Affairs Unit. Three members of the IAU—two female investigators and one male investigator—visited and interviewed Ms. Spencer for approximately two hours about the incident. The male investigator's last name, as best Ms. Spencer can recollect, began with a "B." They wrote out Ms. Spencer's statement and had her sign it. Ms. Spencer never received a response from IAU regarding the investigation.

36. In an effort to identify the Defendants—and particularly the Defendant who kneed her in the vagina and violently searched her, Ms. Spencer made a FOIL request earlier this year for the IAU records and NYPD records relating to her arrest. She never received a response.

. 5

The IAU records in particular may provide the necessary information to clarify and confirm the Defendants' identities.

37. In a further attempt to identify the Defendants, Ms. Spencer also made a FOIL request to the Nassau County District Attorney's Office earlier this year. At the time, the DA's Office responded that they were unable to locate records relating to Ms. Spencer's September 27, 2014, arrest and prosecution despite search efforts, and provided a sworn affidavit to that effect.

38. After Ms. Spencer's initial FOIL requests failed to elicit information regarding Defendants' identities, she also attempted to learn their identities by requesting her case file from her criminal defense counsel. This entailed at least two letters in the U.S. post, an email and telephone calls, but the attorney did not send her the file.

39. Insofar as Ms. Spencer had pled guilty to an offense arising from the Chase Bank incident and arrest, she knew that there had to be FOIL-able police and DA records relating to the incident. Accordingly, last month, Ms. Spencer made renewed FOIL requests with the Nassau County Police Department and the Nassau County DA's Office.

40. Ms. Spencer's second FOIL request with the Nassau County Police Department elicited a response in early September 2017, and it is from the resulting arrest report and case report that Ms. Spencer has been able to identify some or all officers as the Named Defendants in this pleading.

41. The Nassau County DA's Office has not yet produced responsive records, but they have communicated that they have located responsive material and will be producing it at some point in the future.

42. Ms. Spencer suffered serious physical injury as a consequence of the excessive use of force upon her by the Defendant, and the other Defendants' failure to intervene. After the

use of excessive force and the unreasonable search, Ms. Spencer suffered vaginal bleeding requiring her to wear pads.

43. Ms. Spencer also suffered serious and long-lasting vaginal and uterine bruising.

44. Ms. Spencer reported the incident and her injuries to medical personnel for treatment at the time the incident occurred and in subsequent medical visits.

45. Ms. Spencer also experienced a knot on her head and severe headaches relating to the excessive force causing head trauma.

46. Ms. Spencer later required surgery to correct her vaginal prolapse. The use of force and the unjustified, rough search of Ms. Spencer's vaginal region aggravated the condition and caused Ms. Spencer pain and discomfort that she did not have prior to the incident.

47. As a result of the incident, Ms. Spencer also suffered and continues to suffer significant mental and emotional distress which manifested as, inter alia, anxiety, depression, post-traumatic stress disorder, sleeplessness, nightmares and more.

48. The rough and humiliating public search of Ms. Spencer's vaginal and anal regions occurred as a direct result of the unconstitutional policies, customs or practices of Nassau County including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employee officers.

49. The County Defendant knew that there was an obvious risk that its employee officers would violate an individual's constitutional rights in the manner complained of here absent adequate training relating to whether such an intimate search could be performed, and how, when, where and under what other circumstances the Fourth Amendment permits it. The Defendant's statements that there were no boundaries to his authority in this respect permits an inference that the County Defendant inadequately trained him and proximately caused the constitutional violation that Ms. Spencer suffered.

50. Similarly, the other Defendants' failure to intervene to stop the violation despite having the opportunity to do so further permits a reasonable inference that the County Defendant failed to adequately trained its employees to know whether such an intimate search could be performed, and how, when, where and under what circumstances the Fourth Amendment permits it.

51. The precinct captain's statement that Ms. Spencer's complaint did not describe police misconduct about which she could complain further permits an inference that the County Defendant failed to train its officer employees on the subject and that the captain was unaware that the rough, public and unsupported search of Ms. Spencer's intimate areas constituted unreasonable misconduct in violation of the Fourth Amendment.

52. Taking together the Defendant's actions against Ms. Spencer and his comments to her, the surrounding Defendants' failure to intervene despite having a reasonable opportunity, and the captain's refusal to acknowledge that Ms. Spencer's complaint about a violent, public and unsupported search of her intimate areas constituted a viable complaint about police misconduct, it can plausibly be inferred that the County Defendant failed to train its officers regarding the need not to violate suspects' civil rights through unreasonable searches of this ilk and/or the manner of their execution.

53. Assuming arguendo, that Nassau County Defendant has some policy to train employee officers regarding whether a search of an individual's intimate areas is justified, and how, when, where and to what extent such a search may be reasonably performed (at this stage, Ms. Spencer has no knowledge as to the fact or substance of any such training), Ms. Spencer alleges that the circumstantial proof described above demonstrates that the policy was either not implemented or that it was inadequately implemented due to so many officers' apparent lack of

8

awareness of applicable Fourth Amendment and/or reasonableness limitations pertaining to searches of an individual's intimate parts.

54. Ms. Spencer also alleges—again due to so many officers' apparent lack of awareness of Fourth Amendment and/or reasonableness search limitations—that the County Defendants' failure to train manifested through a failure to verify whether any alleged training was effective through attendee testing or other means.

55. More specifically, Ms. Spencer alleges that her experience of Defendants' and the captain's actions, remarks, and failure to intervene shows that there was no meaningful verification, for instance, that any training's substance or administration actually established the intended education regarding circumstances that justify a search of an arrestee's intimate areas, the manner in which it can reasonably be performed, limits on the permissible intrusiveness, the amount of care that must be taken given the sensitivity and fragility of the intimate parts of an individual's body, whether the performance of such sensitive searches may reasonably occur in public in plain view of the general populace, the avoidance of unduly humiliating actions or language during a search which is by definition already humiliating, and more.

56. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar allegations of wrongful conduct by County Defendants' officer employees as documented in civil rights actions filed against Nassau County in federal and state courts and citizen complaints. See, e.g., In re Nassau County Strip Search Cases, 742 F. Supp.2d 304 (EDNY 2010). The County Defendant is alone in possession of the number and nature of such citizen complaints that are settled pre-litigation, or that are made without connection to any claim for damages, for example, to the IAU.

57.     In light of the foregoing, Defendant County is aware that officer employees, including the Defendants here, face difficult choices regarding the fact, scope and manner of such intimate searches, and that adequate training would reduce the risk of constitutional violations occurring in this context by helping employee officers not make the wrong choices. The Defendant County was also aware of this obvious risk by virtue of the need for sensitive handling of searches of individuals' intimate areas pursuant to arrest, which by definition gives rise to risk of unreasonable manner of execution and likely rights violations.

58.     Moreover, on information and belief, Defendant Nassau County was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant Nassau County has retained these officers, and failed to adequately train and supervise them.

59.     All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

60.     All of the aforementioned acts deprived Ms. Spencer of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

61.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

62.     The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and the rules of the Defendant Nassau County and the Nassau County Police Department, all under the supervision of ranking officers of said department.

63. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

64. As a result of the foregoing, Ms. Spencer is entitled to and seeks compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

65. Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

66. Defendants, by their conduct toward Plaintiff alleged herein, violated Plaintiff's rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

67. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive Plaintiff of her constitutional rights.

68. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
## EXCESSIVE FORCE

69. Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

70. Defendants violated the Fourth and Fourteenth Amendments because they used force upon Plaintiff's head and intimate areas which was excessive, objectively unreasonable,

disproportionate to the circumstances, and otherwise in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

71. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of her constitutional rights.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
## UNLAWFUL SEARCH AND UNREASONABLE MANNER OF SEARCH

73. Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

74. In light of the circumstances described above, all of which allegations are herein incorporated by reference, Defendants' search of Plaintiff in public at the scene of her arrest was unreasonable in fact, in its manner of execution, and otherwise in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

75. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of her constitutional rights.

76. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff was subjected to excessive force and sustained the injuries hereinbefore alleged.

## FOURTH CLAIM
## FAILURE TO INTERVENE

77. Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

78. The Individual Defendants either committed the aforementioned unlawful conduct, or they observed such conduct, had an opportunity to prevent the unlawful search and the excessive use of force that it constituted, had a duty to intervene and prevent such conduct and failed to intervene.

79. Accordingly, the Individual Defendants who failed to intervene violated the Fourth and Fourteenth Amendments of the United States Constitution.

80. Individual Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of her constitutional rights.

81. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## MONELL

82. Plaintiff repeats and re-alleges each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

83. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

84. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant County of Nassau included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiff's rights as described herein.

85. As a result of the failure of the Defendant County to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant

County has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

86. Defendant County knew of an obvious risk regarding the likely violation of individuals' rights absent adequate recruitment, screening, training, discipline and supervision of its officers, yet was deliberately indifferent to the same as described in the paragraphs above.

87. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant Nassau County constituted deliberate indifference to Plaintiff's safety, well-being and constitutional rights.

88. The foregoing customs, polices, usages, practices, procedures and rules of Defendant Nassau County were the direct and proximate cause of the constitutional violations suffered by Plaintiff as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully requests the following relief:

   A. An order entering judgment for Plaintiff against Defendants on each of their claims for relief;

   B. Awards to Plaintiff for compensatory damages against all Defendants, jointly and severally, for their violation of Plaintiff's Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

   C. Awards to Plaintiff of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to Plaintiff's constitutional rights and welfare, the amount to be determined at jury trial, which Plaintiff respectfully demands pursuant to FRCP 38;

   D. Awards to Plaintiff of the costs of this action, including reasonable attorneys' fees;

   E. Such further relief as this Court deems just and proper.

DATED:	September 20, 2017
	New York, New York

                                                          /s/ Ryan Lozar
                                                        Ryan Lozar (RL0229)
                                                        305 Broadway, 10th Floor
                                                        New York, New York 10007
                                                        (310) 867-1562

                                                        *Attorney for Plaintiff*